GARY VICTOR DUBIN 3181
LONG H. VU 8840
FREDERICK J. ARENSMEYER 8471
BENJAMIN R. BROWER 9070

Dubin Law Offices
Suite 3100, Harbor Court
55 Merchant Street
Honolulu, Hawaii 96813

Telephone: (808) 537-2300
Facsimile: (808) 523-7733
Email: gdubin@dubinlaw.net
Email: lvu@dubinlaw.net
Email: farensmeyer@dubinlaw.net
Email: bbrower@dubinlaw.net

Attorneys for Plaintiffs
Robert V. Peyton
and Marie T. Peyton

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2009 OCT 12  PM 3: 41

E. ALAGAO
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

### STATE OF HAWAII

| | |
|---|---|
| ROBERT V. PEYTON and MARIE T. PEYTON, | CIVIL NO. 09-1-2377-10 |
| | (Foreclosure) |
| Plaintiffs, | |
| vs. | COMPLAINT FOR INJUNCTIVE RELIEF AGAINST WRONGFUL FORECLOSURE, FOR DECLARATORY JUDGMENT, AND FOR ACTUAL AND PUNITIVE DAMAGES; EXHIBITS 1 THROUGH 4; DEMAND FOR TRIAL BY JURY; SUMMONS |
| OPTION ONE MORTGAGE CORPORATION, a California corporation, its successors and assigns; and DOES 1-30, | |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE RELIEF AGAINST WRONGFUL FORECLOSURE, FOR DECLARATORY JUDGMENT, AND FOR ACTUAL AND PUNITIVE DAMAGES**

I do hereby certify that this is a full, true, and
correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

EXHIBIT "A"

COME NOW Plaintiffs ROBERT V. PEYTON and MARIE T. PEYTON ("Peytons"), by and through their undersigned attorneys, and for their Complaint against Defendant OPTION ONE MORTGAGE CORPORATION, a California corporation, its successors and assigns ("Option One") and DOES 1-30 ("Does"), allege and aver as follows:

### Jurisdiction and Venue

1. This Complaint is filed pursuant to the Federal Truth-In-Lending Act, Section 1601, as amended, *et seq.*, of Title 15 of the United States Code ("TILA") and pursuant to Rule 57 of the Hawaii Rules of Civil Procedure.

2. Venue is proper in this Circuit Court, where Option One has conducted a lending business in the State of Hawaii, and where the property in question is located.

### The Parties

3. Peytons, at all times relevant hereto, were husband and wife and residents of the City and County of Honolulu in the State of Hawaii, the owners of residential real property ("subject property") located at 1214 Mokapu Boulevard, Kailua, Hawaii 96734.

4. Option One at the time of the making of the loan described below was and is a California corporation, headquartered in the City of Irvine in the State of California, doing business throughout the State of Hawaii (therein principally in the City and County of Honolulu), as a foreign corporation with offices in the State of Hawaii, who thereafter withdrew from the State of Hawaii, and who was Peytons' original lender as to their first mortgage as explained below.

5. Peytons believe, and based upon such belief, further allege and aver that there are other individuals, groups, and/or entities, including agents, servants, employers, employees, partners, associates, lenders, loan officers, appraisers, notaries, co-venturers, joint venturers, shareholders, attorneys, accountants, and/or assistants of said already named Defendant, sued herein as Does, who are also partially responsible for the injuries, damages, and harm herein below complained of, or who may be

necessary and indispensable parties hereto, whose true identities and capacities are not yet known to Peytons and to their attorneys, or whose involvement in same has not yet been identified by them and their attorneys; and leave of Court will be requested to add same as additional named Defendants herein at such time as their true identities and capacities and participation in same may become known.

### The Facts

6. Peytons live at the subject property, which at all times material hereto has been their principal dwelling.

7. On or about October 13, 2005, Peytons entered into a loan transaction with Option One in Honolulu, providing Option One with a promissory note, as set forth in Exhibit 1, and a mortgage on their principal dwelling, as set forth in Exhibit 2, on the subject property, in the amount of $654,500, with Option One named as their mortgagee.

8. Peytons did not each receive at closing two accurate and complete requisite TILA notices of the right to cancel as to said 2005 loan, or at any time thereafter, only one blank-dated copy as set forth in Exhibit 3; nor did Peytons receive accurate and complete good faith estimates or complete TILA disclosures at the time of their loan application or loan consummation or at any other time.

9. Accordingly, exercising their TILA rights, Peytons through counsel on October 11, 2009 cancelled said 2005 loan transaction and related Note and Mortgage as a matter of federal and state law, receipted for by Option One as set forth in Exhibit 4 attached hereto, as a matter of law timely rescinding as automatically null and void said 2005 loan transaction and related Note and Mortgage.

10. Option One, however, has continued to refuse to recognize said cancellation, demanding payment of said rescinded Note, and Peytons are threatened with default, acceleration, and foreclosure in violation of federal law, and ruining the credit standing of Peytons as a result.

11. Each and every allegation in each and every Paragraph above is hereby realleged and incorporated within each and every Paragraph below.

## COUNT ONE:
### Declaratory Judgment

12. Peytons seek a declaratory judgment that said 2005 loan has been cancelled as a matter of federal law, and preventing Option One from scheduling any nonjudicial foreclosure action and pursuing any transfer of title to itself or to a third party by exercising a "power of sale" clause in their adhesive 2005 Mortgage in violation of Peytons' contractual, statutory, and due process rights as prohibited state action under both the United States and Hawaii State Constitutions, and to an award of actual and /or statutory damages, including attorneys' fees and costs and including from and against Does once identified, as found to be appropriate upon the trial of this case.

## COUNT TWO:
### Injunctive Relief

13. Peytons seek injunctive relief, preventing Option One from scheduling any nonjudicial foreclosure action and pursuing any transfer of title to itself or to a third party by exercising a "power of sale" clause in their adhesive 2005 Mortgage in violation of Peytons' contractual, statutory, and due process rights as prohibited state action under both the United States and Hawaii State Constitutions, and to an award of actual and/or statutory damages, including attorneys' fees and costs and including from and against Does once identified, as found to be appropriate upon the trial of this case.

### Prayer For Relief

WHEREFORE, Plaintiffs ROBERT V. PEYTON and MARIE T. PEYTON pray that they have Judgment against Defendant OPTION ONE, its successors and assigned, and all Doe Defendants once named, individually and/or jointly and severally, as this Court may determine to be just, as follows:

A. For Declaratory Judgment Against All Defendants;

B. For Injunctive Relief Against All Defendants;

C. For Costs of Suit -- in an amount to be decided by the Court;

D. For Attorneys' Fees -- in an amount to be determined by statute and/or decided by the Court and/or by the Jury; and

E. For Such Other and Further Relief – as deemed just and proper by this Court.

DATED: Honolulu, Hawaii; October 12, 2009.

GARY VICTOR DUBIN
LONG H. VU
FREDERICK J. ARENSMEYER
BENJAMIN R. BROWER
Attorneys for Plaintiffs
Robert V. Peyton
and Marie T. Peyton

Loan Number:   111000798         Servicing Number:   001937212-7         Date:   10/13/05

# NOTE

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

1214  MOKAPU BLVD,  KAILUA, HI 96734-1847
*[Property Address]*

1.   **BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S. $654,500.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
                    Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   **INTEREST**
     Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.350%   .
     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3.   **PAYMENTS**
     **(A) Time and Place of Payments**
     I will pay principal and interest by making payments every month.
     I will make my monthly payments on the first day of each month beginning on   December 01, 2005   .
I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   November 01  ,  2035   .
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at  OPTION ONE MORTGAGE CORPORATION
P.O. BOX 92103 LOS ANGELES, CA 90009-2103          or at a different place if required by the Note Holder.
     **(B) Amount of Monthly Payments**
     My monthly payment will be in the amount of U.S.  $3,762.09  .
     **(C) Application of Payments**
     Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4.   **BORROWER'S RIGHT TO PREPAY**
     I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
     If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
     If within   36 Months   from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

5.   **LOAN CHARGES**
     If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6.   **BORROWER'S FAILURE TO PAY AS REQUIRED**
     **(A) Late Charge for Overdue Payments**
     If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   6.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

MULTISTATE FIXED RATE BALLOON NOTE - Single Family
Page 1 of 2                                                                                          USNT061.wp (05-19-05)

This Is A Copy Of A Larger Document Whose Size Has Been Reduced To 8 ½ x 11.

Loan Number: 111000798          Servicing Number:   001937212-7          Date:  10/13/05

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument.

**(C) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROBERT V. PEYTON                  -Borrower
SSN:  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

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

*(Sign Original Only)*

This Is A Copy Of A Larger Document Whose Size Has Been Reduced To 8½ x 11.

USN7061.wp (05-19-05)

EXHIBIT B

[Space Above This Line For Recording Data]

**WHEN RECORDED MAIL TO:**

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:  RECORDS MANAGEMENT

Loan Number:  111000798
Servicing Number:  001937212-7
Parcel Number: 1-4-4-032-002

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on October 13, 2005   . The mortgagor is
ROBERT V. PEYTON AND MARIE T. PEYTON, HUSBAND AND WIFE, AS TENANTS BY THE
ENTIRETY.

("Borrower").

This Security Instrument is given to
            Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of  CALIFORNIA                    , and whose business
and post office address is Ada, Irvine, CA  92618
("Lender").  Borrower owes Lender the principal sum of
  SIX HUNDRED FIFTY FOUR THOUSAND FIVE HUNDRED              ... AND NO/100THs
Dollars (U.S. $654,500.00      ).  This debt is evidenced by Borrower's note dated the same date as this
Security instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on  November 01, 2035                                    . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all

HAWAII Mortgage - Single Family
Page 1 of 9

HID10011 (10-31-03)

Loan Number:  111000798      Servicing Number:  001937212-7        Date:  10/13/05

renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in            Honolulu
   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.                        , Hawaii:

which has the address of                                                                    [Street, City]
                        1214  MOKAPU BLVD,  KAILUA
Hawaii        96734-1847          ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges.  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance.  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge,

HAWAII Mortgage - Single Family
Page 2 of 9

HID10012 (10-31-03)

Loan Number:  111000798          Servicing Number:  001937212-          Date:10/13/05

an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. Lender may assist mortgagor, borrower, or purchaser in obtaining hazard or property insurance if such assistance is requested in writing by the borrower. If Borrower fails to maintain in coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the

amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specially required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of this Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and

Loan Number:   111000798          Servicing Number:   001937212          Date:10/13/05

entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected

Loan Number:  111000798                Servicing Number:  0019372121              Date:10/13/05

from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous

Loan Number:   111000798       Servicing Number:   0019372121       Date:10/13/05

Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in paragraph 14. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower relinquishes all right of dower and curtesy in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**HAWAII Mortgage – Single Family**
Page 7 of 9

HID10017 (10-31-03)

Loan Number: 111000798          Servicing Number: 001937212-7          Date:10/13/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____

_____ (Seal)          _____ (Seal)
ROBERT V. PEYTON          -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
MARIE T. PEYTON          -Borrower          -Borrower

STATE OF HAWAII,                              ss:

    On this                         day of                              , before me
personally appeared

    ROBERT V. PEYTON and MARIE T. PEYTON
to me known to be the person described in and who executed the foregoing instrument and acknowledged that
executed the same as                              free act and deed.

My Commission Expires:

                              _____
                              Notary Public, State of Hawaii
(Seal)

HAWAII Mortgage - Single Family                              HID10019 (10-31-03)
Page 9 of 9

Loan Number:  111000798          Servicing Number:  001937212-7          Date:  10/13/05

# BALLOON RIDER

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


_____   -Borrower        _____   -Borrower
ROBERT V. PEYTON


_____   -Borrower        _____   -Borrower
                                                    MARIE T. PEYTON


_____   -Borrower        _____   -Borrower


**MULTISTATE BALLOON RIDER**
Page 1 of 1

USR1091.wp (05-19-05)

EXHIBIT C

NOTICE OF RIGHT TO CANCEL

1  3/05

Transaction I.D. No.:                          Loan Number: 111000798     001937212-7
Borrowers: ROBERT V. PEYTON

Property Address:    1214  MOKAPU BLVD
                     KAILUA, HI  96734-1847

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____; (i.e., the date you signed your loan documents) or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also canceled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing,

Name of Creditor    Option One Mortgage Corporation

at                  Pauahi Tower, 1001 Bishop Street
                    Honolulu, HI  96813-3691

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                    _____
        Date                                      Consumer's Signature

ON THE DATE LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

_____  _____    _____  _____
Applicant  ROBERT V. PEYTON       Date      Co-Applicant                       Date

_____  _____    _____  _____
Applicant                         Date      Co-Applicant                       Date

_____  _____    _____  _____
Applicant  MARIE T. PEYTON        Date      Co-Applicant                       Date

Page 1 of 1                                                      USD0011.wp (02-07-03)

EXHIBIT D



**CERTIFIED MAIL**

Dubin
Law
Offices

55 Merchant Street
Suite 3100, Harbor Court
Honolulu, Hawaii 96813
(808) 537-2300

7006 0100 0002 0372 0677

PB87 00538
* * * 147 05.32 0 OCT 11 08
0980 ☆ MAILED FROM HONOLULU HI 96813
8972

AIR MAIL

Option One Mortgage Corporation
Ada
Irvine, CA 92618

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

---



**CERTIFIED MAIL**

Dubin
Law
Offices

55 Merchant Street
Suite 3100, Harbor Court
Honolulu, Hawaii 96813
(808) 537-2300

7006 0100 0002 0372 0660

PB87 00538
* * * 166 05.32 0 OCT 11 08
0930 ☆ MAILED FROM HONOLULU HI 96813
8973

AIR MAIL

Option One Mortgage Corporation
P.O. Box 57096
Irvine, CA 92619

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Option One Mortgage Corporation
Ada
Irvine, CA 92618

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _R. QUINONEZ_
☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7006 0100 0002 0372 0677

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Option One Mortgage Corporation
P.O. Box 57096
Irvine, CA 92619

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X R. QUINONEZ
☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
OCT 16 2008

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7006 0100 0002 0372 0660

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| ROBERT V. PEYTON and MARIE T. PEYTON, | ) CIVIL NO. _____ |
| | ) |
| Plaintiffs, | ) DEMAND FOR TRIAL BY JURY |
| | ) |
| vs. | ) |
| | ) |
| OPTION ONE MORTGAGE CORPORATION, a California corporation, its successors and assigns; and DOES 1-30, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEMAND FOR TRIAL BY JURY

COME NOW Plaintiffs, by and through their undersigned attorneys, and hereby demand trial by jury on all issues.

DATED: Honolulu, Hawaii; October 12, 2009.

GARY VICTOR DUBIN
LONG H. VU
FREDERICK J. ARENSMEYER
BENJAMIN R. BROWER
Attorneys for Plaintiffs
Robert V. Peyton
and Marie T. Peyton

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| ROBERT V. PEYTON and MARIE T. PEYTON, | ) | CIVIL NO. _____ |
| | ) | SUMMONS |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OPTION ONE MORTGAGE CORPORATION, a California corporation, its successors and assigns; and DOES 1-30, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SUMMONS

*TO THE ABOVE-NAMED DEFENDANTS:*

You are hereby summoned and required to serve upon Plaintiffs' attorneys, Gary Victor Dubin, Long H. Vu, Frederick J. Arensmeyer and Benjamin R. Brower, at the Dubin Law Offices, Suite 3100, Harbor Court, 55 Merchant Street, Honolulu, Hawaii 96813, an Answer to the Complaint which is herewith attached.

This action on your part must be taken within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to make your Answer within the twenty (20) day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a Judge of the Above-Entitled Court permits, in writing on the Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATE ISSUED:   OCT 1 2 2009

E. ALAGAO

Clerk, First Circuit