1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3                                    )
    ROBERT V. PEYTON and MARIE T.    )  CV 10-00186 SOM-KSC
4   PEYTON,                          )
                                     )  Honolulu, Hawaii
5            Plaintiff,              )  January 3, 2011
         vs.                         )  9:00 A.M.
6                                    )
    OPTION ONE MORTGAGE              )  Defendant Option One
7   CORPORATION, a California        )  Mortgage Corporation's,
    corporation, its successors      )  now known as Sand Canyon
8   and assigns; et al.,             )  Corporation, Motion for
                                     )  Summary Judgment
9            Defendants.             )
    _____)

10

11               TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE SUSAN OKI MOLLWAY
12               UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Plaintiffs:        GARY VICTOR DUBIN
                                Dubin Law Offices
15                              55 Merchant St., Ste. 3100
                                Honolulu, HI 96813
16
     For Defendant Option       SHELLIE K. PARK-HOAPILI
17   One Mortgage Corporation,  Alston Hunt Floyd & Ing
     now known as Sand Canyon   ASB Twr.
18   Corporation:               1001 Bishop St., Ste. 1800
                                Honolulu, HI 96813
19
     Official Court Reporter:   Debra Kekuna Chun, RPR, CRR
20                              United States District Court
                                300 Ala Moana Blvd. Ste. C285
21                              Honolulu, HI 96850
                                (808) 534-0667
22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

```
 1   MONDAY, JANUARY 3, 2011              9:03 O'CLOCK A.M.

 2           THE CLERK:  Civil 10-186 SOM-KSC, Robert v. Peyton,

 3   et al., versus Option One Mortgage Corporation.  This case has

 4   been called for Defendant's Motion for Summary Judgment.

 5           Counsel, please make your appearances for the record.

 6           MR. DUBIN:  Good morning, Your Honor, and Happy New

 7   Year.

 8           THE COURT:  Happy New Year.

 9           MR. DUBIN:  Gary Dubin, representing the Peyton

10   plaintiffs.

11           MS. PARK-HOAPILI:  Good morning, Your Honor.  Shellie

12   Park-Hoapili on behalf of defendant Option One Mortgage

13   Corporation, now known as Sand Canyon Corporation.

14           THE COURT:  Okay.  Good morning.

15           I did send out an inclination, and I hope you all got

16   it.  As you can tell from the inclination, my thought is that

17   part of the motion should be granted and part denied.  So let's

18   start with the portion that I think should be granted, which is

19   the portion that seeks judgment in favor of defendants on the

20   claim seeking cancellation and rescission from Sand Canyon.

21           Mr. Dubin, why don't we start with that, and I'll let

22   you begin.

23           MR. DUBIN:  I think I got a little confused.  Which

24   one was that?

25           THE COURT:  Well, okay, so part of the motion I'm
```

1    inclined to grant -- did you get the inclination?

2              MR. DUBIN:  Yes.

3              THE COURT:  Okay.  So in the first paragraph I say

4    that I'm inclined to grant the motion to the extent the Peytons

5    are seeking cancellation and rescission from Sand Canyon.

6    Since Sand Canyon has given up Sand Canyon's interest in the

7    loan, it's hard for me to see how you can get that kind of

8    relief from Sand Canyon.  You may or may not be able to get it

9    from somebody else, but with respect to Sand Canyon I'm having

10   some trouble seeing how you can proceed.

11             MR. DUBIN:  Thank you very much.  These inclinations

12   are very helpful.  One of the problems we have in oral argument

13   on hearings is that we never know what's in the judge's mind

14   until after the hearing, and then if we have something else to

15   say, we're told we should have brought it up before.  So this

16   has been an extremely valuable experience.  And I did -- in

17   order to alert the other side, I did respond to the

18   inclination.

19             THE COURT:  Well, you can't really respond to the

20   inclination.  You can only -- I mean you can't do a memo.  I

21   know you have this notice of uncited authorities, and,

22   actually, that's about it that you can do.

23             MR. DUBIN:  Okay.

24             THE COURT:  You're actually not allowed to do this

25   little, you know, explanation about the cases.  And if you

1    read -- if you printed up the inclination, if you read page 1

2    of the inclination and if you look at paragraph 4, it's a

3    single-spaced page that is a whole page of type.  Do you have

4    that?

5              MR. DUBIN:  Yes, I do.

6              THE COURT:  Okay.  So do you see where paragraph 4

7    says "The parties are reminded that..."?

8              MR. DUBIN:  I see, but we are still allowed to refer

9    to uncited authorities.

10             THE COURT:  Right, but it's just a list of the

11   authorities.  You're not supposed to do another memo.  You

12   don't get another bite at the apple.

13             MR. DUBIN:  Okay.

14             THE COURT:  Because, in other words, my telling you

15   ahead of time what I'm thinking doesn't give you a chance to do

16   a supplemental memo.  Because if people thought that, I don't

17   know how I could ever prepare --

18             MR. DUBIN:  I just thought --

19             THE COURT:  -- for the hearing.  So --

20             MR. DUBIN:  -- it was fair to the other side.  But

21   let me --

22             THE COURT:  No.  So next time just give the

23   citations, no explanation, because otherwise you're violating

24   Local Rule 7.4.

25             MR. DUBIN:  I think under that rule we can give a

1    short explanation.

2              THE COURT:  I don't think so.  You're supposed to

3    give a list.

4              I'll look at the rule.  I don't think so.

5              MR. DUBIN:  I think you can, but --

6              THE COURT:  I think that might be the wrong number.

7    Hold on.

8              MR. DUBIN:  I think it's 7.8.

9              THE COURT:  Yeah, that's what I think.  I think it

10   should have said 7.8.

11             I see, you can do a short parenthetical.  No further

12   analysis or argument.  You did more than that.  So what

13   Rule 7.8 says is:  "In addition to providing copies of the

14   uncited authorities, the party may file a document listing the

15   uncited authorities and including a short parenthetical."

16             So that would be part of the citation --

17             MR. DUBIN:  Uh-huh.

18             THE COURT:  -- describing the proposition of law for

19   which each authority is being cited as well as pinpoint

20   citations, but no further analysis or argument.  So your

21   explanation of the cases and how you sought to use them, that's

22   actually in violation of Local Rule 7.8.

23             MR. DUBIN:  Okay.  Well, if I can get to the -- to

24   the argument.

25             The idea that you cannot cancel a mortgage by --

1          THE COURT:  Can I hold on.  One other thing.  And so

2     also your -- what you're calling errata is also not

3     appropriate.  First of all, these are not errata.  Errata are,

4     you know, when I said 2010, I meant 2009; you know, I

5     misspelled so-and-so's name; I left out the year in a case

6     citation.  I know you know this, but, clearly, although you

7     call it an errata declaration, it's not errata.  And, in fact,

8     you say:  "In partial response to this Court's December 30,

9     2010 inclination," and in the inclination itself you are told

10    you cannot do this.  Because you come a lot to court, I just

11    want to make sure we're absolutely clear on this.

12          MR. DUBIN:  I do understand now, but it was -- it was

13    a mistake that was being corrected.

14          Okay.  Now, the issue of why Sand Canyon, formerly

15    known as Option One, we believe, should be in this case, the

16    inclination is based upon a misconception.  The misconception

17    is that the statutory rescission remedy is merely a

18    cancellation of the mortgage.  And, obviously, Sand Canyon

19    doesn't hold the mortgage now; so the question, why should they

20    be in the case?

21          But the rescission remedy under TILA has two parts.

22    One, it cancels the mortgage; and, two, it obligates the holder

23    of the mortgage to pay back various sums of money, monies paid

24    and the credit closing costs.  That becomes an obligation of

25    the holder of the mortgage when the loan is canceled, if, in

1    fact, it is canceled timely and it's canceled for the right

2    reasons.

3         This becomes clear in the reasoning I found in two

4    cases. *Barrett versus JP Morgan Chase*, 445 Federal 3d 874,

5    Sixth Circuit in 2006, and *Handy, Anchor Mortgage Corp.*,

6    464 F.3d 760, Seventh Circuit, 2006.  In those cases -- and

7    that's -- it's not the issue here, but it's a more difficult

8    issue.  In those cases they decided that you could cancel a

9    mortgage that had been paid off, and that's an even harder

10   decision-making context than the one we have here.

11        The reasoning in those cases is that when -- that

12   this is -- according to the U.S. Supreme Court in the Beach

13   case, this is a statute of repose and not a statute of

14   limitations.  And, therefore, as the Supreme Court said in

15   Beach, within three years it's canceled.  Nowhere in the TILA

16   statutes or in the Federal Reserve Board regulations does it

17   say anything about the fact that a borrower has to -- has

18   certain timing in which to effect the cancellation.

19        Now, what's significant in this case is, unlike the

20   two cases cited by the opposition, the Williams case recently

21   decided by Judge Seabright and the Zakarian case decided by

22   Judge Ezra, in those cases the cancellation occurred after the

23   assignment.  And those were also, by the way, Option One cases.

24   In this case the cancellation occurred two years -- almost two

25   years before the assignment.

1          Now, I suggest to the Court it's silly to suggest

2    that borrowers have to chase after these assignments like

3    they're throwing around the secondary mortgage market like a

4    basketball in the National Basketball Association.  For

5    example, almost two years after this case began first in the

6    First Circuit Court, Option One transfers it to Deutsche Bank.

7    Now, what's to stop Deutsche Bank from transferring it tomorrow

8    to the Bank of America's trustee, right up to the time of

9    trial?

10          I suggest, Your Honor, that when this loan was

11   canceled almost two years ago, the holder, Option One, had a

12   present and existing obligation to pay my client the money, and

13   that's why they should be in the case.  They can't just keep on

14   passing these things around.

15          Now, they sold it presumably to Deutsche Bank.  Well,

16   perhaps they unloaded it for a lesser amount.  Now, what if

17   they assigned it to someone who was going to file bankruptcy or

18   someone who was judgment-proof?  Would we then have to go

19   through this procedure of chasing the mortgage?  It doesn't --

20   Your Honor, it doesn't make any sense.

21          Under federal law this loan, if Your Honor decides in

22   fact that it was timely canceled for a good reason under the

23   statute, that that loan was dead almost two years ago.  There

24   was nothing to transfer.  Option One had nothing to transfer.

25   Now, if they disclosed the -- as they should have, if they

1    disclosed this case to Deutsche Bank, Deutsche Bank took it

2    with full knowledge of this case.  If they didn't disclose it

3    to Deutsche Bank, maybe Deutsche Bank has a fraud claim against

4    them.  But in reality, Deutsche Bank, whatever they took was

5    canceled, and that's our position.  And we shouldn't have to

6    chase these.  And I haven't found one case in American law that

7    suggests otherwise.

8              THE COURT:  Well, I don't know that there's any case

9    that says somebody who no longer holds the mortgage can be sued

10   for rescission.

11             MR. DUBIN:  We're suing -- the rescission remedy is a

12   remedy for cancellation and money.

13             THE COURT:  But there's no case that says somebody

14   has to -- can be sued to rescind something that the person

15   doesn't hold.  So it's kind of like you buy a house from an

16   owner.  You want the owner to take back the house.  You may

17   have money damage claims against the owner, but if the owner --

18   that's not a good -- because he won't -- he wouldn't have had

19   the house because he sold it to you.  But he can't give -- the

20   bank can't give back -- it can't -- it can't undo that which it

21   doesn't hold.  So if the bank doesn't hold the loan anymore,

22   how can the bank unwind something it doesn't have?

23             MR. DUBIN:  Simply, because the loan was dead when

24   they held it.

25             THE COURT:  Where's the case that says that, when

1   somebody doesn't hold the loan, they can still have to unwind

2   the loan?  As opposed to a damage claim, which is different.

3   But rescission, an equitable remedy that doesn't go -- you

4   know, normally, if you only had a rescission claim, that would

5   be tried to the court because that's equitable; right?

6        MR. DUBIN:  Your Honor, I think we're -- we are

7   confused by semantics.  That's why I refer the Court to the

8   Barrett and Handy cases of the Sixth and Seventh Circuit, which

9   are still good law in those circuits.  That was an extreme

10  situation where the loan had been paid off.

11       So you could ask, Well, how can you rescind a loan

12  which has already been paid off?  Those courts held that you

13  can.  That there is a dictionary confusion with the word

14  "rescission."  That the TILA rescission remedy is not merely

15  cancellation, but it's also -- and it's not damages either.

16  It's a statutory remedy based upon a formula, not of damages

17  but of unwinding the transaction.  And I just suggest, if Your

18  Honor would read those -- the reasoning of those two cases, I

19  think they're equally applicable here.

20       THE COURT:  Okay.  You want to be heard on that?

21       MS. PARK-HOAPILI:  Yes, Your Honor.  We understand

22  the Court's inclination, and we agree.  The -- as pled in the

23  complaint, what plaintiffs are seeking is an action to cancel

24  this loan and to stop the foreclosure.  Sand Canyon no longer

25  owns the loan, it doesn't service the loan, and so it cannot

1    interfere with Deutsche Bank's right with respect to this loan

2    transaction here.  And we would say that as -- as to

3    cancellation and rescission, Sand Canyon has no authority to

4    give the Peytons the relief that they seek.

5             THE COURT:  Okay.  Do you want to move to the second

6    portion of the inclination?

7             MR. DUBIN:  Could I just reply for a second, Your

8    Honor?

9             THE COURT:  Okay.

10            MR. DUBIN:  What would happen if Deutsche Bank

11   transfers the assignment next week to somebody else?  Is the

12   borrower to be burdened by service of process in amending the

13   complaint?

14            THE COURT:  Well, you know, a lot of times we have

15   this sort of thing happen, and Rule 25 of the Rules of Civil

16   Procedure provide that whoever's the real party in interest can

17   be easily substituted.  So, you know, people get sued and die,

18   and that rule kicks in.  You sue a governmental official,

19   there's a new election, that official steps down and is

20   replaced.  That rule applies.  And if there's a merger or a

21   sale or something, we have another procedure for that to

22   happen.  But right now, you know, Deutsche Bank is an easily

23   reachable party.

24            MR. DUBIN:  In the Miguel case, it started in this

25   court in '01 in a trial before Judge Ezra, and it went up on

1   appeal to the Circuit Court.  The Ninth Circuit Court of

2   Appeals decided that we had served the servicing agent the

3   cancellation notice -- that was actually before I got into the

4   case -- and not the original lender.  And, therefore, we lost

5   on the Court of Appeals because we hadn't served somebody who

6   was -- who no longer held the mortgage, to show you the extreme

7   nature of the confusion that exists.

8           Fortunately, when the reserve -- the staff of the

9   Federal Reserve Board heard of that decision, they speedily

10  changed the rule retroactively.  So you can now serve the

11  servicing agent, and if you serve the servicing agent, then the

12  lender, who owns the mortgage, is bound even though they were

13  not served with it.  So that's the reverse looking at --

14  looking at another end of the wrong end of the telescope.

15          THE COURT:  Okay.

16          MR. DUBIN:  That in real -- there's a reality behind

17  this.  It's totally unfair that my client should have to pay

18  more money, serve more people, amend the complaint.  Does

19  Deutsche Bank not know of this case?

20          To me the central issue is that, unlike the Zakarian

21  and the Williams case, Option One held this mortgage for two

22  years after this -- almost two years after this case started

23  before they transferred it.  That should be the determining

24  factor.

25          THE COURT:  But, you know, it's -- when a loan is

1   transferred, of course, the borrower doesn't control the

2   transfer, but the borrower knows that something has happened,

3   if there is a transfer and it affects where the borrower's

4   payments are supposed to go, because whoever has the loan

5   always wants to make sure the holder of the note is paid.  So

6   somehow or other the borrower has to send payments in to

7   somebody.

8            MR. DUBIN:  It doesn't work that way, Your Honor.

9   They have a servicing agent.

10           THE COURT:  Yeah.

11           MR. DUBIN:  Many times you don't even know who

12   holds -- you do not know who holds -- claims to hold the

13   mortgage until they foreclose.  In this case, when they started

14   a non-judicial foreclose --

15           THE COURT:  So since you said that it's okay to serve

16   the servicing agent, serve that party.

17           MR. DUBIN:  We did.

18           THE COURT:  Okay.  But Sand Canyon --

19           MR. DUBIN:  It was -- it was Option One.

20           THE COURT:  And when Sand Canyon no longer holds the

21   note, then you can use Rule 25?  I mean I just don't understand

22   why I should hold -- but, you know, I want to move to the

23   second issue.

24           MR. DUBIN:  If you read those two cases --

25           THE COURT:  Okay.

1          MR. DUBIN:  -- that's the best reasoning I've found.

2          THE COURT:  Okay.

3          MS. PARK-HOAPILI:  Your Honor, we understand the

4     Court's inclination with respect to damages in this case.

5     Under TILA, money damages, the plaintiffs or borrowers are

6     required to file a claim within one year of the violation.  For

7     such things like disclosure violations, that one year would

8     take place from the date the loan was consummated.  In this

9     case I believe it was October 12th, 2006.  Just let me

10    double-check that.

11         THE COURT:  So is there a challenge to the

12    authenticity of these envelopes?

13         MS. PARK-HOAPILI:  I would dispute -- I would

14    challenge.  We don't know what was sent in that envelope that

15    was attached to the complaint.  It just was a mailing to Option

16    One.  It could have been anything.  Mr. -- plaintiffs' counsel

17    has submitted in his errata letter that I would ask this Court

18    not -- for purposes of this hearing, it was filed yesterday,

19    and, you know, I've asked that the Court not consider it for

20    purposes of this hearing.  We -- you know, we never received

21    any cancellation letter, and the two -- the two envelopes,

22    certified envelopes, do not establish any claim that a

23    cancellation letter was actually sent as they purport.

24         THE COURT:  Okay.  Did you --

25         MS. PARK-HOAPILI:  And, Your Honor, you know, even

```
 1   assuming -- let's assume that this -- that there was a
 2   purported cancellation.  Even assuming we extended the one-year
 3   period, the complaint was still filed after the one-year
 4   purported cancellation of this -- of this -- of a purported
 5   violation of the loan transaction.  And, you know, for purposes
 6   of this case, the relief that they are seeking is cancellation
 7   and injunctive relief to stop the foreclosure.  We are unaware
 8   of any damages per se that are being sought by plaintiffs in
 9   this case.
10        THE COURT:  Okay.  Mr. Dubin, you want to move to
11   that part of the inclination?
12        MR. DUBIN:  Yes.  Yes.  Well, I just need to start
13   out by saying the complaint was filed within one year.  The --
14   well, as I pointed out in my errata declaration, there was,
15   apparently, a computer glitch.  Now, this motion for summary
16   judgment did not challenge this.  That was not a material issue
17   that was a part -- which was a part of this motion here today.
18   The motion was based upon two propositions of law; therefore,
19   that was not addressed in a declaration because it was not put
20   in issue.
21        However -- and the absence of the letter in exhibit 4
22   was never even called to our attention by the other side or by
23   the Court.  When we got your inclination, we went to the -- we
24   went to the file and we found the letter, which, of course,
25   we're not used to sending out envelopes without letters, and
```

 1   so, therefore, I have exhibited the letter in response to this

 2   Court's inclination as to --

 3          THE COURT:  Well, I guess I have this concern.  If

 4   this is a matter in dispute, whether this letter was actually

 5   sent on the date which you're saying was in -- I think you're

 6   saying was October 11, 2008, and if it was sent by you --

 7          MR. DUBIN:  Uh-huh.

 8          THE COURT:  -- then if there's a dispute about this,

 9   aren't you going to be deposed and won't you become a very

10   important witness if there's an issue of fact as to timeliness

11   that has to go to trial?  I mean I guess I'm a little concerned

12   about how all of this is going it play out.

13          MR. DUBIN:  Well, if that were the case, Your Honor,

14   normal procedure is that I would have somebody else from the

15   firm do -- do the trial.  That's the way that normally would be

16   resolved.  But, however, that's usually only in a case, you

17   know, when there is a jury so that the jury doesn't form an

18   opinion as to the individual who's representing the party that

19   interferes with their believability from the testimony.

20          THE COURT:  I don't know that's only with the jury.

21          MR. DUBIN:  I say it's easily resolved by, I

22   wouldn't -- first of all, I don't know if that's a -- if that's

23   a disputed issue.

24          THE COURT:  Well, she's saying that they're

25   unprepared to address it.  Presumably, they want to take your

 1    deposition or something.

 2              MR. DUBIN:  Well, that's all right, but, you know,

 3    I -- we send out many of these.  It's essentially the same form

 4    letter.  And we can take the deposition of their people, this

 5    gentleman or woman who got these letters, to see what was

 6    inside.  But we're not in the habit of sending -- sending out

 7    envelopes with no -- no letters in it.  This is not -- this is

 8    not a very difficult letter.  This is just a form letter we

 9    send out.

10              THE COURT:  I know, but if it wasn't sent, then

11    you're going to have a hard time with that second part of my

12    inclination.  And in order for me to deny that portion of the

13    motion, I think it's pretty important for me to know what was

14    sent when, and --

15              MR. DUBIN:  Yes, but, Your Honor, that was not part

16    of the motion.  Nothing in the motion challenged any of the

17    material facts.  It was all done on -- if they had challenged

18    this, then we would have had an appropriate declaration in

19    opposition to the motion.  This motion was -- this motion was

20    strictly on legal issues.

21              THE COURT:  Still, though, you see, for me I -- no

22    matter what the parties say or do, I have to figure out what

23    the record supports.

24              MR. DUBIN:  Well, we appreciate that.

25              THE COURT:  And right now, you know, I'm really

1    concerned about the way this has played out.  And it may be

2    there's fault on both sides, but the record didn't have the

3    letter until you put in this unauthorized exhibit to what

4    you're calling an errata declaration, which is not really

5    errata at all.  You're affecting the substance.  And so I'm

6    really concerned about how this played out.

7         To me what might make sense is for me to continue

8    this hearing, and you folks go and take whatever discovery you

9    need, and I'll give you a briefing schedule to supplement the

10   record.  But the supplement is only on this issue of what was

11   in those envelopes and when was it sent.

12        MR. DUBIN:  Well, I suggest, Your Honor, that -- that

13   would at the very least be a disputed issue anyway.

14        THE COURT:  I don't know -- but they're getting

15   evidence from you that they didn't have before.  Presumably,

16   had you put this -- had they raised this in their motion and

17   you put this into their opposition, they would have sought to

18   inquire further about it, and they didn't have this chance.

19        So my suggestion is that I continue the hearing and

20   allow discovery and briefing on this but limited to the issue

21   of what was in the envelopes and when was the letter sent.

22        MR. DUBIN:  Well, that's fine, Your Honor, except

23   that that can easily be achieved by them.  They can always file

24   a summary judgment motion, which actually challenges that

25   issue.

 1          THE COURT:  No, I'm going to let them do a

 2     supplemental brief, and then you can do a supp -- but only on

 3     that issue.

 4          MR. DUBIN:  That's fine.

 5          THE COURT:  Okay.  So the next available hearing

 6     date, I think, is in March.  Hold on.

 7       (Court and courtroom manager conferring.)

 8          THE CLERK:  Okay.  10:30.

 9          THE COURT:  Okay.  So 10:30, March 28, is a continued

10     hearing on this motion.

11          MR. DUBIN:  Your Honor, I may be in trial in First

12     Circuit Court.  There's a trial on the 21st, and it's supposed

13     to go two weeks.

14          THE COURT:  Okay.  Well, why don't you -- as we get

15     closer to that date, you can call the courtroom manager, and

16     we'll certainly not expect you to be in two places at once.

17          Wait.  Let me go off the record for a minute.

18          MS. PARK-HOAPILI:  Okay.  Can we go off the record.

19       (Discussion off the record.)

20          THE COURT:  Okay.  So back on the record.

21          So I'm moving this hearing to -- was it 10:30?

22          THE CLERK:  Yes.

23          THE COURT:  10:30 on March 28.  And I'm going to give

24     you a briefing schedule.  If there's a supplement to the

25     motion, I am going to require that that be filed by

```
 1    February 18.  And if there is a response -- a supplemental

 2    opposition -- but this is limited to those issues:  what was

 3    sent, when was it sent.  And, Mr. Dubin, you can file a

 4    supplemental opposition.  I will give you until March 4.  And

 5    then March 11 for any supplemental reply.  Just on that very

 6    limited issue.  Okay?

 7              So I'm continuing the hearing until then.  Thank you.

 8         (Court recessed at 9:35 A.M.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1                    COURT REPORTER'S CERTIFICATE

 2          I, Debra Kekuna Chun, Official Court Reporter, United

 3    States District Court, District of Hawaii, do hereby certify

 4    that the foregoing is a true, complete, and correct transcript

 5    from the record of proceedings in the above-entitled matter.

 6          DATED at Honolulu, Hawaii, February 1, 2012.

 7

 8                                  /s/ Debra Chun

 9                                  DEBRA KEKUNA CHUN

10                                  RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25