1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF HAWAII

3                                    )
     ROBERT V. PEYTON and MARIE T.   )   CV 10-00186 SOM-KSC
4    PEYTON,                         )
                                     )   Honolulu, Hawaii
5             Plaintiff,             )   March 28, 2011
          vs.                        )   10:30 A.M.
6                                    )
     OPTION ONE MORTGAGE             )   Continued Hearing on
7    CORPORATION, a California       )   Defendant Option One
     corporation, its successors     )   Mortgage Corporation's,
8    and assigns; et al.,            )   now known as Sand Canyon
                                     )   Corporation, Motion for
9             Defendants.            )   Summary Judgment
     _____)

10

11                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE SUSAN OKI MOLLWAY
12                   UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Plaintiffs:        GARY VICTOR DUBIN
                                Dubin Law Offices
15                              55 Merchant St., Ste. 3100
                                Honolulu, HI 96813
16
     For Defendant Option       SHELLIE K. PARK-HOAPILI
17   One Mortgage Corporation,  Alston Hunt Floyd & Ing
     now known as Sand Canyon   ASB Twr.
18   Corporation:               1001 Bishop St., Ste. 1800
                                Honolulu, HI 96813
19
     Official Court Reporter:   Debra Kekuna Chun, RPR, CRR
20                              United States District Court
                                300 Ala Moana Blvd. Ste. C285
21                              Honolulu, HI 96850
                                (808) 534-0667
22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

1    MONDAY, MARCH 28, 2011              10:34 O'CLOCK A.M.

2          THE CLERK:  Civil 10-186SOM-KSC, Robert Peyton, et

3    al., versus Option One Mortgage Corporation.  This case has

4    been called for a Continued Hearing on Defendant's Motion for

5    Summary Judgment.

6          Counsel, please make your appearances for the record.

7          MS. PARK-HOAPILI:  Good morning, Your Honor.  Shellie

8    Park-Hoapili on behalf of Option One Mortgage Corporation, now

9    known as Sand Canyon Corporation.

10          MR. DUBIN:  Good morning, Your Honor.  Gary Dubin,

11   representing the Peyton plaintiffs.

12          THE COURT:  Okay.  So, you know, this is a continued

13   hearing.  And you had the -- an inclination earlier, and then

14   we asked for more information.  I guess I want to start by

15   asking about when Sand Canyon assigned the loan.

16          MS. PARK-HOAPILI:  Your Honor, Sand Canyon -- in

17   about March 2006 they sold the loan to HSI Asset Securitization

18   Corporation.  So shortly after the loan was made they sold it

19   to this other entity.

20          THE COURT:  Okay.  Wait, now.  You're telling me in

21   2006?

22          MS. PARK-HOAPILI:  In 2006 that's when the loan was

23   sold.

24          THE COURT:  Okay.  So what do I do with these

25   declarations that give me two different dates in 2010 and one

1  date saying before October 2008?  Where in the record should I

2  look for this 2006 date that you're telling me about?

3       MS. PARK-HOAPILI:  Your Honor, that evidence is not

4  in the record.  I do apologize for that.

5       The assignment was recorded in 2010.  That was

6  something that was recorded in the bureau at that time.  In

7  Mr. Sugimoto's declaration saying it was -- in paragraph 11.

8  Before -- once the letter -- at the time of the cancellation

9  letter, they didn't own the loan; that is correct.  At the time

10 that the purported cancellation letter was sent by plaintiffs'

11 counsel, Option One did not own the loan.

12      THE COURT:  Okay.  But I have two different

13 declarations from Mr. Sugimoto:  one saying there was an

14 assignment in June 2010; one saying that the mortgage was

15 assigned before October 2008, which I guess is what you're

16 saying meant in 2006.

17      MS. PARK-HOAPILI:  It was sold before (nodding).

18      THE COURT:  How could they assign the loan in June

19 2010 if they didn't own it then?

20      MS. PARK-HOAPILI:  Your Honor, I believe that, you

21 know, I -- that's something I would have to go back and ask my

22 client.  I mean I do know that that loan was sold.  This might

23 have just been paperwork to just record the sale transaction,

24 although it was recorded in two -- last year, even though it

25 was sold before.  And I believe there is some kind of agreement

1    documenting the loan sale in 2006.

2         THE COURT:  Okay.  But doesn't he say in paragraph 7

3    and 8 of his September 20, 2010 declaration that the mortgage

4    was assigned in June 2010?

5         MS. PARK-HOAPILI:  I -- you know, I think the way

6    it's worded it was -- the assignment is reflected pursuant to

7    this recorded assignment; however, there is a sale agreement

8    that consummates the sale transaction.

9         THE COURT:  Okay.  Well, I'll look at that.  It's

10   pretty confusing to me and -- okay.  Even if I take your

11   assertion that it was assigned before October 2008, were the

12   borrowers told about that?

13        MS. PARK-HOAPILI:  Your Honor, I believe the

14   borrowers were given information as to who their new loan

15   servicer was.  I do not know whether or not they were

16   specifically informed by the new owner whether -- that they now

17   owned the loan.  I do know that they were told by both the new

18   servicer and Option One as the previous servicer that there is

19   a new servicing and where correspondence can be mailed and

20   where billing statements -- bills should be sent.

21        THE COURT:  Okay.  Wait, now.  At the time that the

22   rescission notice was sent by the Peytons who was the servicer?

23        MS. PARK-HOAPILI:  At the time the rescission notice

24   was sent by the Peytons the loan servicer was American Home

25   Mortgage Servicing, Inc.

1          THE COURT:  Okay.  And where were they told that?

2          MS. PARK-HOAPILI:  There is -- I believe there is a

3     letter -- a letter --

4          THE COURT:  Is it in the record?

5          MS. PARK-HOAPILI:  -- submitted in this.  It's

6     exhibit B.  To the supplemental reply.

7          THE COURT:  Okay.  The reason that, you know, I'm

8     really confused about this is we have a number of cases

9     involving often the same lenders, and we discovered from prior

10    cases that Option One and American Home Mortgage use the same

11    address.  And, in fact, in one of the hearings a different

12    attorney, not your firm, represented that American Home

13    Mortgage did business as Option One.

14         And so I'm really confused when you tell me, "Okay.

15    Had a different servicer."  I don't know that the borrower

16    could really tell what was going on because I think the address

17    was exactly the same.  And if you send mail to Option One to

18    this address, it was the same address as American Home Mortgage

19    used, and American Home Mortgage's person would sign as

20    receiving the mail for Option One, even when it was addressed

21    to Option One.  Right?

22         MS. PARK-HOAPILI:  Uh-huh.  You know, in looking at

23    exhibit B, the addresses that were used is a Florida address

24    and a Texas address that they would be sending, I guess,

25    correspondence to for American Home, which is different from

1    addresses for Option One.  So I don't know if --

2          THE COURT:  Okay.

3          MS. PARK-HOAPILI:  -- someone was signing mail for

4    Option One.  I know -- I do understand the confusions.  I have

5    other cases that, you know, are a little confusing, but --

6          THE COURT:  You might want to look at -- we just did

7    a decision, and the plaintiff's name is Kishimoto.  Anyway, we

8    discussed a lot of this American Home Mortgage and Option One

9    and Sand Canyon and all of that stuff in here in that decision.

10          But in any event -- okay.  As I understand it, your

11    client on the damage claim -- maybe you want to talk about the

12    damage claim because, if there's a question of fact about

13    whether a lender received a valid rescission notice within the

14    required time, then how can I grant summary judgment on the

15    damage claim?

16          MS. PARK-HOAPILI:  Your Honor, I do -- I do

17    understand your concern.  As far as damages, you know, damages

18    would still have to depend on whether or not the plaintiffs

19    have established that they are entitled to rescissionary

20    relief.

21          As to Sand Canyon, who does not own the loan and does

22    not serve this loan, they don't have authority and cannot

23    rescind the loan.

24          THE COURT:  Okay.  But why is that?  I understand

25    that, if you don't own the loan, you can't rescind the loan.

1  But I don't know that it follows that, if you don't own the

2  loan, you don't owe damages relating to failure to rescind.

3         If, for example, you didn't tell the borrower where

4  to send things; so the borrower sent it to you, and then the

5  real lender -- I understand there may still be a factual

6  dispute about when Option One ceased to be the lender, but even

7  if I go with you that Option One was not the lender by the time

8  the rescission notice was sent in 2008, if Option One, in

9  effect, denied a borrower the opportunity to notify the real

10  lender in a timely way, by not telling the borrower that, Okay.

11  We're not the lender anymore and you should send, you know,

12  things to so-and-so, the new -- because the new lender, if the

13  new lender were to come in and say, Okay.  We'll rescind the

14  loan which we have, but we don't owe damages because we never

15  got this notice and Option One was supposed to have forwarded

16  us things, or whatever was your agreement, I mean, you know,

17  you can see that the poor borrower is going to get whipsawed

18  here not having been fully informed where to send things.

19  That's a concern I have.

20         MS. PARK-HOAPILI:  I do understand that, Your Honor.

21  And in exhibit B this letter was mailed to them several months

22  before the purported cancellation letter was sent, which says

23  where to send their payment and where to send correspondence.

24  So there were two separate addresses that they were informed of

25  where they could send the cancellation letter, if that's what

1   they sent.

2          THE COURT:  Okay.  Well, let me hear from Mr. Dubin.

3          MR. DUBIN:  I don't really have very much to say.  In

4   looking at the Court's inclination, I don't think the *King*

5   *versus California* case is relevant in paragraph 1 because that

6   case involved a loan that had been paid.  Here we have a loan

7   that's still ongoing.

8          The second problem I have with the analysis --

9          THE COURT:  But it wasn't still ongoing with Sand

10  Canyon, was it?

11         MR. DUBIN:  Well, here's how I see it.  Right now it

12  appears that Deutsche Bank owns the mortgage and presumably the

13  note.  Now, what stops them -- let's say we go to trial.  A

14  week before trial they transfer it to somebody else.  Do we

15  then have to go and go after somebody else and not have the

16  rescission remedy?

17         THE COURT:  No, but you might have -- I mean so you

18  may well still have your damage claim.

19         MR. DUBIN:  Well, that's true.  On the top of page 5

20  in our original memorandum in opposition, I cited the court to

21  two -- to two cases, the Hopkins case and the Miranda case,

22  which said that lack of power to rescind is not grounds for

23  blocking liability to return --

24         THE COURT:  Okay.  Now, are those -- are those Ninth

25  Circuit cases?

1          MR. DUBIN:   -- rescinded amounts.

2          Well, let's see.  One was a bankruptcy case in

3    Pennsylvania, and the other one was a Federal District Court

4    case in Illinois.

5          THE COURT:  Because, see, I really -- I'm worried

6    about this *King versus California* Ninth Circuit case.

7          MR. DUBIN:  Well, you know, I became an expert on

8    that case.  I may have pointed it out to the Court in prior

9    papers, but it's a matter of record that below King had no

10   attorney, and in the appellate court I don't believe that she

11   even filed a brief.  And, of course, she -- she didn't complain

12   about anything because she never even -- I think she didn't

13   even appear in court for that summary judgment hearing.

14         So most cases outside this jurisdiction consider that

15   to be highly dicta.  I don't know to what extent -- I think the

16   matter maybe someday will go back up to the Ninth Circuit.

17         THE COURT:  Okay.  But then I have this en banc

18   decision from the Ninth Circuit that says, if it's on a matter

19   of law, even dicta is binding.  So, you know, there's such an

20   en banc opinion.

21         MR. DUBIN:  I know.  So the Ninth Circuit is the only

22   circuit to my knowledge that adheres to that concept.

23         THE COURT:  Okay.  But, you know --

24         MR. DUBIN:  It's a logical concept, but --

25         THE COURT:  But I live in the Ninth Circuit; so, you

1    know --

2            MR. DUBIN:  I know.  But, you know, other courts have

3    explained it that the law -- the statute says that the loan

4    transaction is canceled, not just the mortgage.  But again, you

5    know, it doesn't really matter to us because now Deutsche Bank

6    claims it has the mortgage; so we've added Deutsche Bank to the

7    case.

8            THE COURT:  Yeah, right.  Right.

9            MR. DUBIN:  And then we will rescind against Deutsche

10   Bank.

11           THE COURT:  Right.  Right.

12           MR. DUBIN:  The problem we have as litigators is

13   that, you know, we don't want to have to keep chasing the ball

14   back and forth.

15           THE COURT:  Well, I think once you start a lawsuit,

16   the likelihood that there will be a different lender in the

17   picture to seek rescission from diminishes because, just as a

18   commercial matter, not that many lenders want to buy a loan

19   that is in the midst of litigation.  It's possible they could

20   do it.

21           MR. DUBIN:  That's a good point, Your Honor, and I

22   notice in the agreement that we had given to us where Option

23   One purported to sell the mortgage and maybe the note, it also

24   provided for a very stiff indemnification clause, giving --

25   giving the assignee the power to kick it back to Option One.

1   So that raises another interesting question.

2        THE COURT:  Okay.  But wait till that happens, and

3   then we'll -- we'll dig into that because we have enough

4   problems as it is; so...

5        MR. DUBIN:  I'm satisfied in going after Deutsche

6   Bank for the rescission, but in the last month extraordinary

7   revelations have taken place on the mainland.  We're told by

8   servicers under oath in depositions that the note and the

9   mortgage are always --

10       THE COURT:  Right.

11       MR. DUBIN:  -- destroyed.  That they digitize all of

12   these things.  And with a hundred million mortgages they have a

13   hard time keeping track of things.  And then we're told by

14   servicers that they often have falsified assignments in order

15   to figure out who actually owns the mortgage.  So there's an

16   awful lot of sloppiness here.

17       THE COURT:  Well, I'm particularly concerned about

18   the, you know, the way that American Home Mortgage and Option

19   One are -- are related, overlapping.  For sure in my Kishimoto

20   case they were using the same address, and so things

21   sent addressed to Option One went to an American Home Mortgage

22   office, and American Home Mortgage signed receipt -- mail

23   received for Option One.  And counsel for Option One did say

24   American Home Mortgage was doing business as Option One.  So,

25   you know, I have a lot of concern about relying on --

1             MR. DUBIN:  Can I put this in historical perspective?

2    The Attorney General of Massachusetts filed an original

3    proceeding in the Massachusetts high court -- judicial court,

4    high court, whatever the name of it is -- and that court,

5    coincidentally with a class -- law school classmate of mine as

6    the judge, decided that Option One was such a bad lender that

7    Option One would not be allowed to file a foreclosure action in

8    the State of Massachusetts without the permission of the

9    Attorney General of that state.  It was like eight days later

10   that Option One started to disappear.  So I think there's --

11   sometimes there's reasons why these companies change their

12   names and pass the stuff on.  But by that time Option One had

13   lost its ability really to function.

14            Now, the same thing has happened to MERS.  There's

15   about 10 courts -- federal and state courts in the United

16   States that have ruled that MERS has no ability to foreclose.

17   So a couple days later MERS announced it will no longer be the

18   plaintiff in foreclosure actions.

19            So they're playing a lot of games, and,

20   unfortunately, our courts operate under the old model where

21   somebody gets a mortgage, you record the mortgage, you know who

22   the mortgagee is, you know who you can go to if you're in

23   trouble, et cetera.  The secondary mortgage market created a

24   different model where they effectively ignore the recording

25   statutes, they ignored the issues of preserving the note if you

 1    had a bearer note, and then they found themselves in a

 2    situation where having to foreclose, they had to create

 3    documents, and one thing led to another.  And we have cases

 4    where they say that they own the -- that they have the note in

 5    their safe, you know, and they can't seem to show it to us.

 6         So you've got these two competing models, and, you

 7    know, and our courts, particularly in Hawai'i, still start with

 8    the traditional model of real property, when, in fact, these

 9    people have just ignored the traditional recording and real

10    property.

11         THE COURT:  Well, one of the things that's happening,

12    though, because of the volume of these cases that are coming

13    through the courts, courts are becoming more and more familiar

14    with how each of the different lenders -- the history of each

15    of the different lenders.  So I mean you're hearing me refer to

16    one that I just decided last week, which happened to involve

17    Option One and American Home Mortgage and so forth.  So, you

18    know, we're doing our best to sort all this out.

19         MR. DUBIN:  And the same thing is happening in the

20    state courts as well.

21         THE COURT:  Yeah, yeah, yeah.

22         MR. DUBIN:  They're beginning --

23         THE COURT:  Absolutely.  Right, right.

24         MR. DUBIN:  Yeah.

25         THE COURT:  Okay.  Well, you know -- actually, I

1   don't see how your client is at all disadvantaged by my

2   inclination since, you know, I'm inclined to keep the damage

3   claim in to tell you you can't go for actual rescission -- you

4   can go for rescission damages but not actual rescission against

5   Option One.  But as you say, since Deutsche Bank is now a party

6   and is the purported holder of the loan, you're not without a

7   remedy within this very suit; so, you know, I don't know I -- I

8   actually don't see any harm to you in how I've proposed to do

9   this in this case.

10          MR. DUBIN:  No, there's really no harm, but, you

11  know, my client -- my clients are normal people.  They just

12  want to go on with their life and settle and get a decent

13  mortgage they can live with, and they find themselves caught up

14  in all of this.  And there's a great emotional strain that the

15  borrowers endure.

16          And let me just say I uncovered another thing I

17  hadn't known before.  The servicer under these agreements is

18  required to pay the investor the monies, even if the borrower

19  defaults.  And the servicer then -- that's why many of them do

20  not want to modify the loan because they can't get their money

21  back as fast.  So the servicer who looks like they're an

22  independent party in the issue of loan modification actually is

23  a -- is a player.  And since the investor who was sold the

24  mortgage is -- has to be kept current and pay, it raises an

25  interesting issue whether any of these loans are theoretically

1    in default, and raises another issue about who the real party

2    is.  So it's getting more and more complicated.  Thank you.

3          THE COURT:  Okay.  Did you want to add anything?

4          MS. PARK-HOAPILI:  Your Honor, just as to your -- the

5    first part of your inclination and Mr. Dubin's remarks.  You

6    know, the relief that they're seeking is a recognition of

7    cancellation and to stop foreclosures.  Sand Canyon is not

8    foreclosing.  They don't own it; so they're not foreclosing, as

9    your inclination --

10          THE COURT:  Okay.  Okay.  Well, I'm going to take

11   this under advisement and consider everything that's been said

12   at this hearing.  You know, you'll get a written order.  If I

13   had to guess on the timing, I'd say within 10 days.  Thank you.

14          MS. PARK-HOAPILI:  Thank you, Your Honor.

15       (Court recessed at 10:56 A.M.)

16

17

18

19

20

21

22

23

24

25

1                     COURT REPORTER'S CERTIFICATE

2          I, Debra Kekuna Chun, Official Court Reporter, United

3   States District Court, District of Hawaii, do hereby certify

4   that the foregoing is a true, complete, and correct transcript

5   from the record of proceedings in the above-entitled matter.

6          DATED at Honolulu, Hawaii, February 1, 2012.

7

8                                      /s/ Debra Chun

9                                      DEBRA KEKUNA CHUN

10                                     RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25